**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| iStar RC Paradise Valley LLC ("iStar"), a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>Five Star Development Communities LLC, an Arizona limited liability company,<br><br>                    Defendant. | No. CV-10-2191-PHX-GMS<br><br>**ORDER** |

        Plaintiff iStar RC Paradise Valley LLC ("iStar") seeks to remedy the allegedly fraudulent transfer of title to some of the collateral it should hold for a multi-million dollar mortgage loan. Pending before the Court is Defendant Five Star Development Communities LLC's ("Five Star Communities") Motion to Dismiss Plaintiff's Amended Complaint and, in the Alternative, Motion to Stay Proceedings. (Doc. 21). For the reasons provided below, the Court denies both Defendant's Motion to Dismiss and Defendant's Motion to Stay.

## BACKGROUND

        The following facts are alleged in Plaintiff's Amended Complaint and are taken as true for the purposes of this motion. Plaintiff iStar is a Delaware LLC whose membership interests are wholly owned by iStar Financial, Inc., a Maryland corporation. (Doc. 20 at ¶¶ 2-3). iStar Financial, Inc.'s principal place of business is in the State of New York. (*Id.* at ¶ 3). Defendant Five Star Communities is an Arizona LLC whose membership interests are wholly owned by Jerry C. Ayoub, a citizen of the State of Arizona, who also acts as its sole

manager. (*Id.* at ¶¶ 4-5). Five Star Communities' "affiliate," Five Star Development Resort Communities LLC ("Five Star Resort"), is also an Arizona LLC, whose membership interests are wholly owned by Five Star Development Properties, LLC ("Five Star Properties"). (*Id.* at ¶¶ 6- 7). Like Five Star Communities, Five Star Properties is wholly owned by Mr. Ayoub.[1] (*Id.* at ¶ 9).

On May 18, 2007, Five Star Resort purchased 120 acres of undeveloped desert land located partially in Paradise Valley, Arizona, and partially in Scottsdale, Arizona. (Doc. 20 at ¶ 13). In connection with this purchase, Five Star Resort executed a Loan and Security Agreement ("Loan Agreement") with iStar. (*Id.* at ¶ 15). iStar received a Deed of Trust constituting a first lien on the "Mortgaged Property." (*Id.*). The term "Mortgaged Property" was defined in the Loan Agreement to effectively encumber all of Five Star Resort's assets for the benefit of iStar and the repayment of the loan. (*Id.*). The loan funded 1) the purchase of the land and 2) infrastructure improvements such as sewers, roads, and landscaping, and was not for the construction of buildings or residential properties. (*Id.* at ¶ 16).

On April 10, 2008, Five Star Resort and the Town of Paradise Valley executed a "Development Agreement" that required, among other things, that Five Star Resort purchase a strip of land called the Indian Bend right-of-way ("Right-of-Way") from the Town. (Doc. 20 at ¶ 18). This purchase was a condition precedent to the Town's approval of Five Star Resort's development project and required the payment of $370,000. (*Id.* at ¶ 19).

Periodically, Five Star Resort would make draw requests on iStar pursuant to the Loan Agreement. On December 12, 2008, Five Star Resort delivered to iStar its revised Draw Request No. 19 in which Five Star Resort requested the $370,000 needed to purchase the Right-of-Way. (*Id.* at ¶ 20). This Draw Request contained a "Borrower's Sworn Statement" that "each party which is to receive proceeds from this request is entitled to the sum being

---

[1]In other words, there are three "Five Star" entities: Five Star Communities (the Defendant in this action); Five Star Properties; and Five Star Resort. Five Star Resort is the wholly owned subsidiary of Five Star Properties. Both Five Star Communities and Five Star Properties are wholly owned by Mr. Ayoub.

requested." (*Id.* at ¶ 22). Mr. Ayoub authorized the submission of the Draw Request. (*Id.*). On January 5, 2009, Mr. Ayoub contacted iStar by phone and represented that Five Star Resort was scheduled to appear before the Town of Paradise Valley Planning Commission that evening and needed the $370,000 immediately to purchase the Right-of-Way. (*Id.* at ¶ 25). In reliance on the representations in Mr. Ayoub's phone call, iStar authorized the immediate funding of the $370,000. (*Id.* at ¶ 26).

The Amended Complaint alleges that Mr. Ayoub's representations were intentionally false. Mr. Ayoub knew Five Star Resort was not appearing before the commission that evening. (Doc. 20 at ¶ 27). Moreover, Mr. Ayoub did not intend to have Five Star Resort close the purchase agreement. (*Id.*)*.* On January 7, 2009, Five Star Resort and the Town of Paradise Valley executed supplemental escrow instructions for the purchase agreement changing the closing date for the purchase to January 20, 2009, and Five Star Resort deposited the $370,000 into escrow. (*Id.* at ¶ 28).

On January 15, 2009, Mr. Ayoub formed Defendant Five Star Communities. (Doc. 20 at ¶ 29). He intended that the Five Star Communities name be deceptively similar[2] to that of Five Star Resort; indeed his "sole purpose" of forming Five Star Communities was to accept transfer of title to the Right-of-Way. (*Id.* at ¶¶ 29-30). On January 20, 2009, Five Star Resort assigned all of its rights in the purchase agreement and the $370,000 escrow funds to the newly formed Five Star Communities. (*Id.* at ¶ 31). Five Star Communities did not supply any substantial consideration in exchange for these property rights. (*Id.*). Also on January 20, 2009, Five Star Communities and the Town of Paradise Valley closed the purchase agreement, releasing to the Town the $370,000 and to Five Star Communities the deed to the Right-of-Way. (*Id.* at ¶ 32). Had it not been for the transfer from Five Star Resort to Five Star Communities, title to the Right-of-Way would have been taken in Five Star Resort's name and been part of the Mortgaged Property subject to the Deed of Trust. (Doc. 20 at ¶ 33). Due

---

[2]Compare "Five Star Development Communities, LLC" with "Five Star Development Resort Communities, LLC."

1   to the transfer, however, title to the Right-of-Way vested in Five Star Communities. (*Id.* at

2   ¶ 32). The transfer violated multiple provisions of the Deed of Trust and the Loan

3   Agreement. (*Id.* at ¶ 34).

4       On March 6, 2009, Five Star Resort commenced litigation against iStar in the

5   Southern District of New York, asserting certain contract and tort claims under New York

6   state law relating to the Loan Agreement. *See Five Star Development Resort Communities*

7   *v. iStar RC Paradise Valley LLC,* 09-CV-2085-LTS, Docs. 1, 18. In turn, iStar

8   counterclaimed against Five Star Resort, Five Star Communities, and Mr. Ayoub, alleging

9   that these three parties acted in concert to ensure that the Right-of-Way would not be

10  subjected to the Deed of Trust, thereby defrauding iStar. *Id.*, Doc. 66 at ¶239. However, after

11  Five Star Communities moved to dismiss iStar's counterclaim on personal jurisdiction

12  grounds, iStar amended its counterclaim to remove Five Star Communities as a defendant

13  in that case. *Id.*, Docs. 72, 82. On the same day it removed Five Star Communities as a

14  defendant in the Southern District of New York case, iStar commenced the instant action

15  against Five Star Communities in the District of Arizona. (Doc. 1).[3]

16                                **DISCUSSION**

17  **I.    Plaintiff's Motion to Dismiss**

18          **A.    Legal Standard**

19      To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil

20  Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a

21  "formulaic recitation of the elements of a cause of action"; it must contain factual allegations

22  sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

23  550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a

24  statement of facts that merely creates a suspicion [of] a legally cognizable right of action."

25

26      [3]Defendant filed a Motion to Dismiss Plaintiff's initial Complaint on March 2, 2011.
27  (*See* Doc. 15). After Plaintiff filed its Amended Complaint, however, Defendant filed the
    revised Motion to Dismiss that is the subject of this Order. (*See* Doc. 21). Defendant's initial
28  Motion to Dismiss, Doc. 15, is therefore denied as moot.

*Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Although "a complaint need not contain detailed factual allegations," *Clemens*, 534 F.3d at 1022, the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**B.     Analysis**

**1.     Count I – Statutory Claim for Fraudulent Transfer**

iStar first alleges that Five Star Resort intended to defraud iStar when it transferred the Right-of-Way to Five Star Communities. Under both Arizona's Uniform Fraudulent

Transfer Act and the State of New York's Uniform Fraudulent Conveyance Act, where a debtor makes a transfer with the "actual intent" to defraud any creditor, the transfer is considered fraudulent. A.R.S. § 44-1004(A) (2011); N.Y. Deb. & Cred. § 276 (2011). Under both Acts, the debtor's actual intent "may be shown by direct proof or by circumstantial evidence from which actual intent may be reasonably inferred." *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1136 (D. Ariz. 2006). *See also Marine Midland Bank v. Murkoff*, 508 N.Y.S.2d 17, 21 (App. 1986) ("[F]raudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act."). A complaint "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

In this case, Plaintiff has stated the circumstances constituting fraud with particularity. Plaintiff alleges that Five Star Communities was formed with a name deceptively similar to Five Star Resort just five days prior to the transfer of the Right-of-Way (Doc. 20 at ¶¶ 29-30), and that Five Star Communities did not pay any substantial consideration in exchange for the transfer. (*Id.* at ¶ 41). Plaintiff also asserts that Five Star Resort and Five Star Communities were both wholly owned by Mr. Ayoub (*Id.* at ¶¶ 4, 7–8), and therefore that Five Star Resort has retained effective control of the Right-of-Way since the transfer. (*Id.* at ¶ 40). Five Star Resort's continued control of the Right-of-Way, Plaintiff contends, is evidenced by the fact that the Right-of-Way has since been "included in the final plat and the CCRs covering Five Star Resort's Project." (*Id.* at ¶ 40). In short, Plaintiff has alleged particular circumstances which, if construed in the most favorable light to Plaintiff, establish fraudulent intent. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's "actual intent" fraudulent transfer claim.

### 2. Count II – Statutory Claim for Constructive Fraud

iStar also alleges that Five Star Resort's transfer of the Right-of-Way to Five Star Communities constitutes constructive fraud. In both Arizona and the State of New York**,** constructive fraud occurs where 1) a transfer lacks fair consideration and 2) the debtor is

1    insolvent or thereby rendered insolvent. A.R.S. § 44-1004(A); N.Y. Deb. & Cred. § 273.

2    Plaintiff alleges that the transfer of the Right-of-Way was "made without . . . reasonably

3    equivalent value or fair consideration." (Doc. 20 at ¶ 50). Plaintiff also asserts that at the time

4    of the transfer, Five Star Resort was "already in default of the Loan Agreement or was aware

5    that it . . . would be unable to repay the loan upon maturity." (*Id.* at ¶ 49). These allegations

6    are not a "formulaic recitation of the elements" of constructive fraud. *Twombly*, 550 U.S.

7    at 555. Rather, Plaintiff has alleged particular facts, such as Defendant's actual or impending

8    default on the Loan Agreement, which if viewed in the light most favorable to Plaintiff,

9    constitute a constructively fraudulent transfer. The Court, therefore, denies Defendant's

10   motion to dismiss Plaintiff's claim of constructive fraud.

11                              **3.     Count III – Aiding and Abetting**

12          Plaintiff iStar next alleges that Defendant aided and abetted Five Star Resort's fraud.

13   (Doc. 20 at ¶ 56). To establish liability for aiding and abetting the commission of a tort, iStar

14   must show that: (1) the primary tortfeasor, Five Star Resort, "committ[ed] a tort that caus[ed]

15   injury"; (2) Defendant knew that Five Star Resort's conduct "constituted a breach of duty";

16   and (3) Defendant "substantially assist[ed] or encourage[d]" Five Star Resort in such

17   conduct. *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 485 (2002).

18          First, Plaintiff must establish that Five Star Resort "committ[ed] a tort," namely fraud.

19   *Id.* at 485. According to the Arizona Court of Appeals, actionable fraud depends on the

20   concurrence of nine elements:

21                  (1) a representation; (2) its falsity; (3) its materiality; (4) the
22                  speaker's knowledge of its falsity or ignorance of its truth; (5)
                    his intent that it should be acted upon by the person and in a
23                  manner reasonably contemplated; (6) the hearer's ignorance of
                    its falsity; (7) his reliance on its truth; (8) his right to rely
24                  thereon, and (9) his consequent and proximate injury. *Wagner
                    v. Casteel*, 136 Ariz. 29, 31 (App. 1983).

25

26   Plaintiff has not only asserted that Five Star Resort and its representatives knowingly

27   submitted materially false representations, but has described the circumstances surrounding

28   such representations with particularity. (Doc. 20 at ¶¶ 25-27, 56). In addition, Plaintiff has

1    adequately asserted that the misrepresentations were made to be acted on by iStar (*Id.* at

2    ¶ 54), that iStar was ignorant to their falsity and relied on them (*Id.* at ¶ 26–27), and that such

3    reliance injured iStar by depriving it of its interest in the Right-of-Way. (*Id.* at ¶ 55).

4         Second, Plaintiff must establish that Defendant *knew* of Five Star Resort's

5    misconduct. *Wells Fargo*, 201 Ariz. at 485**.** Defendant claims that iStar has failed to plead

6    this required knowledge element. (Doc. 25 at 5). Plaintiff, however, has asserted that

7    Defendant (1) "was aware that Five Star Resort had made false representations"; and (2)

8    "knowingly benefitt[ed] from the fraud." (Doc. 20 at 56-57). Moreover, Plaintiff has claimed

9    that Mr. Ayoub not only knew of Five Star Resort's fraud but helped perpetrate it. (Doc 20

10   at 25-27). If Defendant is, as Plaintiff contends, entirely owned and controlled by Mr. Ayoub

11   (*Id.* at ¶¶ 4-5), then Mr. Ayoub's knowledge can be imputed to Defendant. *See cf. Wells*

12   *Fargo*, 201 Ariz. at 485 ("[T]he party charged with the tort must have knowledge of the

13   primary violation, and such knowledge may be inferred from the circumstances."). Plaintiff

14   has adequately alleged, therefore, that Defendant knew of Five Star Resort's fraud.

15        Finally, Defendant must have "substantially assist[ed] or encourage[d]" Five Star

16   Resort. *Wells Fargo,* 201 Ariz. at 485. Defendant Five Star Communities was formed on

17   January 15, 2009 – about two weeks after Mr. Ayoub's allegedly fraudulent phone call. (Doc.

18   20 at ¶¶ 20, 25, 29). Because Defendant was not in existence at the time of Mr. Ayoub's

19   alleged misrepresentations, it argues that it cannot be held liable for aiding and abetting Five

20   Star Resort's fraud. (Doc. 25 at 5). Defendant has failed to provide, however, and the Court

21   has failed to find, a single case holding that assistance cannot postdate a tortfeasor's

22   misrepresentations. Case law states simply that the aider and abetter must "substantially

23   assist or encourage the primary tortfeasor." *Wells Fargo*, 201 Ariz. at 485. Plaintiff contends

24   that Defendant assisted Five Star Resort by deceiving iStar as to who would hold the deed

25   to the Right-of-Way and by harboring the Right-of-Way for Five Star Resort so that iStar

26   could not recover it. (Doc. 20 at ¶¶ 29-30, 33). Such assistance is substantial. Because

27   Plaintiff has adequately plead that Defendant aided and abetted Five Star Resort's fraud, the

28   Court denies Defendant's motion to dismiss this count.

### 4.     Count IV – Alter Ego

Plaintiff next asserts that Defendant is the alter ego of Five Star Resort, and therefore that the Court should disregard Defendant's separate corporate existence and deem the Right-of-Way part of the Five Star Resort's "Mortgaged Premises." (Doc. 20 at ¶ 62). To hold corporate entities liable on an alter ego theory, it must be the case that (1) there is "unity of control" between two corporate entities; and that (2) "observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37 (1991).

Plaintiff must first establish "unity of control" between Defendant and Five Star Resort. *Id.* Unity of control is shown where one corporate entity exercises "substantially total control over the management and activities" of another. *Id.* As the Arizona Supreme Court has stated, factors to be considered in determining the existence of "substantially total control" include:

> stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence. *Gatecliff*, 170 Ariz. at 37.

Plaintiff alleges facts in this case which, if viewed in the light most favorable to Plaintiff, establish several of these factors. For instance, Defendant and Five Star Resort have a sole common officer (Doc. 20 at ¶ 9), Five Star Resort paid for Defendant's acquisition of the Right-of-Way (*Id.* at ¶¶ 20, 31), and Plaintiff iStar lacked knowledge about Defendant's separate corporate existence. (*Id.* at ¶¶ 29-30, 42). Moreover, Plaintiff alleges that Five Star Resort has "retained effective control" of the Right-of-Way since the transfer, as the Right-of-Way "was included in the final plat . . . covering Five Star Resort's Project." (*Id.* at ¶ 40). This alleged control of the Right-of-Way, when considered together with Plaintiff's claim that the Right-of-Way is the "sole purpose" for Defendant's existence (*Id.* at ¶ 30), makes it plausible that Five Star Resort exercises "total control" over Defendant. *Gatecliff*, 170 Ariz. at 37. *See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)

(quoting *Twombly*, 550 U.S. at 570) ("[A] complaint need not contain detailed factual allegations . . . [but] it must plead 'enough facts to state a claim to relief that is plausible on its face.'").

Plaintiff iStar must also establish that observance of the corporate form would "sanction a fraud or create injustice." *Gatecliff*, 170 Ariz. at 37. Plaintiff adequately contends that recognition of Defendant's corporate form would sanction Five Star Resort's fraudulent transfer, which "place[d] the title to the [Right-of-Way] beyond the reach of iStar's Deed of Trust." (Doc. 20 at ¶ 61). In sum, Plaintiff has plead both unity of control between Defendant and iStar, and that observance of these entities' corporate form would sanction fraud. The Court therefore denies Defendant's motion to dismiss Count IV.

### 5.    Count V – Unjust Enrichment

Finally, Plaintiff contends that Defendant was "unjustly enriched" by the transfer of the Right-of-Way. (Doc. 20 at ¶ 64). To succeed on an unjust enrichment theory, a plaintiff "must demonstrate that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. App. 2011). iStar has adequately alleged that Five Star Communities received a benefit, that it was unjustly enriched at iStar's expense, and that circumstances are such that iStar should have returned to it its interest in the Right-of-Way. (Doc. 20 at ¶¶ 63-66).

Defendant argues, citing *Baker v. Trans Union LLC*, that Plaintiff can only succeed on its unjust enrichment claim if Plaintiff conferred a benefit on Defendant "directly." No. CV07-8032, 2008 WL 2329099, 2 (D. Ariz. June 4, 2008) ("Plaintiff has alleged no facts that show that Plaintiff directly conferred any benefit to Defendant."). (*See also* Doc. 25 at 9). In *Baker*, the plaintiff owned a business which helped clients correct mistakes on their credit reports. 2008 WL 2329099 at 1. The plaintiff alleged that Trans Union, a credit bureau, was enriched unjustly due to its "failure to accurately update these clients' credit reports."*Id.* The

1    court in *Baker*, however, held that "[w]hile Plaintiff claims that she lost some revenue as a
2    result of [Trans Union's] actions or inactions, Plaintiff has not shown that she rendered
3    services to [Trans Union] that specifically benefitted [Trans Union] at her expense." *Baker,*
4    2008 WL 2329099 at 2 ("Plaintiff has alleged no facts that show that Plaintiff directly
5    conferred any benefit to Defendant.").

6          The allegations in the instant case are inapposite to those in *Baker*. Here, iStar
7    contends that due to its rendering of financing, Defendant took title to the Right-of-Way,
8    which is "a valuable portion of the Project integral to its development and operations." (Doc.
9    20 at ¶ 64). In other words, iStar asserts that by taking title to the Right-of-Way, Defendant
10   was enriched at iStar's expense. Defendant asserts that the loan funds were funneled through
11   Five Star Resort, and therefore that iStar did not *directly* confer any benefit on Defendant.
12   (Doc. 25 at 9-10). According to the complaint, however, Defendant's acquisition of
13   unencumbered title to the Right-of-Way resulted from the same transactional nexus through
14   which iStar was to acquire a lien on the Right-of-Way. (Doc. 20 at ¶ 33). Accordingly, the
15   connection between iStar's rendering of services and the Defendant's taking of title is much
16   less attenuated than the connection between Trans Union and the plaintiff's business in
17   *Baker. See* 2008 WL 2329099 at 1. In short, Plaintiff has "raise[ed] a right to relief above the
18   speculative level." *Twombly*, 550 U.S. at 555. Defendant's motion to dismiss Count V is
19   therefore denied.

20   **II.    Defendant's Stay Request**

21         Defendant contends that this case is duplicative of the case Five Star Resort has
22   brought against Plaintiff in the Southern District of New York. (Doc. 21 at 16-17). *See also*
23   *Five Star Development Resort Communities v. iStar RC Paradise Valley LLC,* Case No. 09-
24   CV-2085-LTS. Defendant argues, therefore, that the Court should stay this case pending
25   resolution of the New York litigation. (*Id.*). "A suit is duplicative if the claims, parties, and
26   available relief do not significantly differ between the two actions." *Barapind v. Reno*, 72 F.
27   Supp. 2d 1132, 1145 (E.D.Cal. 1999) (internal citation omitted). Where one suit is
28   duplicative of another, "the court has discretion to abate or dismiss the second action." *Id.*

at 1144; *see also Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (citing *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982) (holding that a court may stay or dismiss an action "when a complaint involving the same parties and issues has already been filed in another district")). Nevertheless, Plaintiff attempted to assert all of its claims as cross-claims in the New York action brought by Five Star Resort. Five Star Communities is no longer a defendant in the New York action due to Defendant's assertion that Plaintiff lacked personal jurisdiction over it in New York. Thus, the duplicative nature of this action is due to Defendant's decision to require it, and the equitable relief Plaintiff seeks in this action is not available in the New York action. While Defendant may, of course, assert its jurisdictional rights, the Court is disinclined to allow it to unfairly profit thereby. The Court therefore denies Defendant's request for a stay.

## CONCLUSION

For the above reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint is denied. Defendant's Motion to Stay Proceedings is also denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint and, in the Alternative, Motion to Stay Proceedings (Doc. 21) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss; and Alternative Motion to Stay (Doc. 15) is **DENIED as moot.**

DATED this 13th day of October, 2011.

G. Murray Snow
United States District Judge